Joan Sharrock, Individually and on Behalf of All Others Similarly Situated, Appellant, v Dell Buick-Cadillac, Inc., et al., Respondents.

Second Department, March 28, 1977

*Martin A. Schwartz* and *Alan Steiner* for appellant.

*Daniel G. Levin (James K. Levin* of counsel), for respondents.

*Louis J. Lefkowitz, Attorney-General (A. Seth Greenwald* and *Samuel A. Hirshowitz* of counsel), appearing pursuant to section 71 of the Executive Law.

DAMIANI, J. In this action plaintiff seeks injunctive and declaratory relief and damages. She contests the constitutionality of sections 184, 200, 201, 202 and 204 of the New York Lien Law, which, *inter alia,* pertain to the sale of a vehicle to satisfy a garageman's lien.

Plaintiff appeals from an order of the Supreme Court, Westchester County, entered September 15, 1976, which denied her motion for summary judgment and for a determination that the action is a proper class action.

The full opinion of Special Term reads:

"This is not an appropriate case for a class action. (See CPLR 902). Further, there being viable issues of fact, summary judgment would be inappropriate.

"With respect to the question of the constitutionality of Section 204 of the New York Lien Law, full findings of fact are necessary before the Court can make a determination as to whether or not said Section as applied here was repugnant to the due process clause of the Fourteenth Amendment. It would not be proper to make a final ruling before the facts are found. (See *Hernandez v European Auto Collision, Inc.,* 487 F2d 378 [1973].)"

We find that the only triable issue of fact presented by this record relates to the claim for damages raised by plaintiff's complaint and defendants' counterclaim. We also hold that the sale provisions of sections 200, 201, 202 and 204 of the Lien Law, which authorize a garageman to enforce his lien for repair and storage charges by the sale of an automobile at public auction without affording its owner an opportunity to be heard, violate due process of law.

On October 12, 1975 plaintiff's husband took her 1970 Cadillac to defendant Dell Buick-Cadillac, Inc. (hereinafter Dell Buick), in Ossining, New York, to have a replacement engine, which he had purchased elsewhere, installed in the car. It was agreed that Dell Buick would remove the car's defective engine and install the replacement engine for $225. Plaintiff's husband signed an authorization for the work. The supporting affidavits of plaintiff and her husband on her

motion for summary judgment state that the authorization signed by the husband had "nothing written on it which indicated that he agreed to pay any storage charges."

About one week later, plaintiff's husband returned to Dell Buick and was told that the engine had not been installed and that he should return the following Friday. At that time he offered to pay the $225, but was told by the service manager to wait until the engine was installed. However, after it was installed, it proved to be defective and had to be removed. Dell Buick arranged to have "an exchange engine" delivered to the shop for installation.

In early December, 1975 the service manager informed plaintiff's husband that the exchange engine had been received, but that it would not be installed until the $225 was paid for the installation of the defective engine. Although he agreed to pay the sum, plaintiff's husband did not have that much money with him at the time.

Later that month, plaintiff's husband injured his back and was hospitalized, rendering him incapable of continuing his business dealings with Dell Buick.

On or about January 14, 1976, plaintiff received a "Notice of Lien and Sale" by certified mail informing her that Dell Buick had imposed a possessory lien against her automobile pursuant to section 184 of the Lien Law, in the amount of $304.95, and that if she did not pay this sum by February 25, 1976 the automobile would be sold at public auction on March 15, 1976 (pursuant to section 200 of the Lien Law).

Plaintiff was subsequently informed by Mr. Dante V. Cataldi, one of the licensed auctioneers who was listed on the notice, that the $304.95 included an additional charge for storage. Plaintiff informed Mr. Cataldi that she was not aware that there would be any charge for storage.

Several days later Mr. Cataldi advised plaintiff that Dell Buick would not "take off" the storage charge and that the total amount owed was $545. He also informed her that the book value of the car was $1,200 to $1,400 and that it would be better for her to pay the charges because she could not buy a car like that for $545 and Dell Buick "had * * * [her] over a barrel" because her husband had taken the car there for repair. On March 15, 1976 the service manager informed plaintiff that the amount owed was $502. On that day, Cataldi sold plaintiff's car at public auction to Dell Buick. Although

the sale had been advertised, plaintiff was not afforded an opportunity for a hearing prior to the sale.

The affidavit of the president of Dell Buick in opposition to the motion for summary judgment asserts that "plaintiff has refused and has failed and has never responded to our request for payment of the said $225.00. As a result of the failure of the plaintiff to make any payment for the work that we had completed, we then went through the usual proceedings required for the fixation of our lien and for sale under the Lien Law. We claim a lien pursuant to Section 184 of the Lien Law in the amount of $304.95."

After this action was commenced, plaintiff's counsel offered $225 to Dell Buick through its attorney, but the tender was refused. Dell Buick apparently still retains possession of the automobile.

On April 1, 1976 plaintiff commenced this action seeking injunctive and declaratory relief, as well as damages. Plaintiff thereafter made this motion for a determination that this action is a proper class action and for summary judgment. Plaintiff set forth all of the facts hereinbefore related and contended that section 200 of the Lien Law was violative of her due process rights since it permitted public sale of the car without a hearing. The motion was denied in all respects by Special Term in the brief opinion set forth above.

Plaintiff's major contention is that the court erred in refusing to declare section 200 of the Lien Law unconstitutional, in view of the fact that her supporting affidavits alleged that she had not been afforded a hearing prior to the sale. In essence she claims that, regardless of any factual dispute as to the amount owed, she was entitled, as a matter of due process, to a hearing with an opportunity to contest Dell Buick's charge for services and storage.

The following statutory scheme, as set forth in the Lien Law, was followed by the defendants:

Section 184 grants a garageman a possessory lien against a motor vehicle for maintenance, repair or storage charges.

Section 200 permits a lien against personal property in the legal possession of the lienor to be satisfied by the sale of the property pursuant to the provisions of article 9 of the Lien Law.

Section 201 provides that, prior to the sale of the property, the lienor shall serve the owner with a notice of sale.

Section 202 provides that the sale of the property at public auction must be advertised.

Section 204 provides for the disposition of the proceeds of the sale.

In *Blye v Globe-Wernicke Realty Co.* (33 NY2d 15), the Court of Appeals declared section 181 of the Lien Law (innkeeper's lien) to be unconstitutional. That statute permitted the summary seizure of the personal property of a guest by the innkeeper without prior notice and an opportunity to be heard. The court said (pp 20-22):

"Procedural due process requires notice and *an opportunity for a hearing* before the State may deprive a person of a possessory interest in his property. *(Sniadach v. Family Finance Corp.,* 395 U.S. 337; *Fuentes v. Shevin,* 407 U.S. 67, 80-84; *Boddie v. Connecticut,* 401 U.S. 371, 378-379.) The protection is not limited to necessaries *(Fuentes v. Shevin, supra,* at pp. 88-90), although the relative weight of the property interest involved may be relevant to the form of notice and hearing required by due process. Nor does the availability of the right turn on the relative degree of permanence of the deprivation, nor may it be defeated by provision for recovery of the property. *Only an extraordinary or truly unusual situation will justify postponing notice and opportunity for a hearing. (Fuentes v. Shevin, supra,* at p. 90; *Boddie v. Connecticut, supra,* at pp. 378-379.) Thus, for example, summary seizure may be permissible where necessary to secure an important governmental or general public interest or where the need for prompt action is paramount. *(Sniadach v. Family Finance Corp., supra,* at p. 339; *Fuentes v Shevin, supra,* at p. 90; *Boddie v Connecticut, supra,* at p. 379.)

"It cannot be said that the statute before us serves such an important governmental or general public interest. As the Supreme Court noted in an analogous context in *Fuentes* (at p. 92), 'no more than private gain is directly at stake.' And as this case well illustrates, summary seizure of a guest's property may deprive him of the sum of his possessions. Consequently, it may affect his ability to hold a job, making him a burden to family or friends, or perhaps even a public charge * * *

"*The fact is that the statutory scheme does not contemplate the bringing of a nonpayment suit, nor any judicial determination, pre or post seizure, of the validity of the keeper's claim. The statute sweeps broadly* and, as a matter of course,

permits the unchecked summary seizure of a guest's property without regard to the validity of the particular claim and without regard to whether the particular guest is likely to remove or conceal himself and his property if given notice and opportunity for a hearing. In resolving the conflicting interests and in light of the feasible alternatives, we believe the guest's interest in possession and use of his property outweighs the innkeeper's interest in summarily seizing that property to secure the payment of charges.

"Conditioning the innkeeper's lien with procedural due process safeguards will not destroy it or leave the keeper at the mercy of the defaulting guest. The keeper's right under the Lien Law to seize a defaulting guest's property and to sell it at a public auction (and the State's power to confer that right) is not questioned. *All that is necessary is that the fundamentals of due process be observed. This imports that, absent extraordinary circumstances, the guest be afforded notice and the opportunity to be heard before being deprived of the possession of his property." (Emphasis supplied.)*

The rationale of the *Blye* case applies to section 200 of the Lien Law. Although the statutory scheme at bar provides for prior notice of the sale, it does not afford the owner an opportunity to be heard. Under the reasoning of *Blye,* such a hearing, absent extraordinary circumstances, is an essential ingredient of due process.

It is also clear that with the instant statute "no more than private gain is directly at stake", while, at the same time, the sale of the bailor's car without a prior hearing could "affect his ability to hold a job, making him a burden on family or friends", etc. In fact such a situation is present in the case at bar, where plaintiff has alleged that the automobile is needed by her in order to seek employment, to pursue the family's everyday activities and to enable her to travel to nursing school.

The case of *Hernandez v European Auto Collision* (487 F2d 378) is particularly apposite because there, too, a car owner attacked the above statutory scheme of the New York Lien Law. Judge WYZANSKI stated (pp 382-383): "We are of the view that, upon a full finding of the facts, which has not yet occurred because the complaint was dismissed for failure to state a cause of action, it may appear that the garage company and the plaintiff were in dispute as to the former's charges for storage and repair, that in this posture, without

taking the initiative to afford plaintiff opportunity for judicial ascertainment of the asserted debt, the garage defendant authorized the auctioneer, pursuant to New York Lien Law § 204, to sell plaintiff's car, that the auctioneer sold the car, and that the auctioneer then turned over to the garage company the whole proceeds in partial satisfaction of the amount the garage company had claimed was owing to it for storage and repair charges. If those should be the facts found, then we would conclude that plaintiff has, under the doctrines enunciated in *Fuentes v. Shevin,* 407 U.S. 67 * * * *Bell v. Burson,* 402 U.S. 535 * * * and *Sniadach v. Family Finance Corp.,* 395 U.S. 337 * * * a tenable contention that Section 204 of the New York Lien Law as applied here was repugnant to the due process clause of the Fourteenth Amendment and that he is entitled to a declaratory judgment and perhaps to compensatory and possibly punitive damages. We have not overlooked what was said below about the state procedures, such as replevin, which were open to plaintiff to have forestalled the sale. But we are persuaded that, even if those remedies would have been effective, they do not validate Section 204 of the New York Lien Law so as to give defendants the right to sell plaintiff's property without either judicial ascertainment of the amount owed by plaintiff to the garage company or plaintiff's admission or contractual stipulation as to the amount due. However, it is manifestly not proper for us to make final rulings on those points before the facts are found by the District Court after a plenary trial. All that we now do is to reverse the dismissal of the complaint and to remand the case to the District Court with directions to try the case on its merits."

Judge TIMBERS, in a separate concurring opinion in which Judge LUMBARD concurred, stated, in part (pp 384-385):

"As I read the cases, however, it is the deprivation of a significant *property interest* that gives rise to the requirement of a prior opportunity to be heard. Eg. *Boddie v. Connecticut,* 401 U.S. 371 (1971); *Fuentes v. Shevin, supra,* 407 U. S. [67] at 86 * * *

"The sale provisions of the Lien Law permits the permanent deprivation of a significant property interest without a prior hearing; the statutory language is not confined to extraordinary situations in which such summary action might be justifiable. Comparing the Lien Law here to the replevin

statutes struck down in *Fuentes,* there would appear to be an even greater disregard for the basic elements of due process.

"The sale of the liened goods, for example, completely extinguishes the possibility of any future right of repossession in the event of ultimate success on the merits; replevin, in contrast, is a provisional remedy intended to preserve the integrity of the goods pending trial on the underlying claim. Moreover, a common replevin provision requires that an action on the merits be commenced contemporaneously by the creditor; the Lien Law, on the other hand, permits the enforcement of the lien, and the liquidation of the goods, without any judicial review at any stage." (Emphasis in original.)

Upon remand to the District Court, plaintiff moved for summary judgment and the motion was granted by an order dated February 8, 1974 (Eastern Dist NY, Index No. 72-C-629). The District Judge found that the defendant had caused the sale at auction of plaintiff's automobile and had retained the proceeds in partial satisfaction of its asserted debt. The court further found that, although the amount of the debt was in dispute, the car was sold, in accordance with sections 200, 201, 202 and 204 of the Lien Law, without the plaintiff's consent and prior to a judicial ascertainment of the amount owed. The court said:

"In light of these findings the court holds that the enforcement provisions of the New York Lien Law sections 200-02 and 204, as applied to the facts of this case violated the plaintiff's rights guaranteed by the due process clause of the Fourteenth Amendment. *Hernandez v European Auto Collision, Inc.,* 487 F2d 378 (2d Cir. 1973).

"There remains, however, a genuine issue as to the amount of damages incurred by the plaintiff. Therefore that issue must be determined at trial. Fed. R. Civ. P. 56 (d)."

Thus, it was ultimately found in *Hernandez,* as here, that there was no dispute about the fact that defendant enforced a lien on plaintiff's car by selling it at auction pursuant to section 200 of the Lien Law, without affording plaintiff an opportunity for a hearing. It was also concluded that such action constituted a denial of due process and that there remained for determination only the issue of damages.

The recent decision of this court in *Carl A. Morse, Inc. v Rentar Ind. Development Corp.* (56 AD2d 30) does not affect the result reached here. The majority there held that the ex parte *filing* of a mechanic's lien did not work a deprivation of

any constitutionally protected rights. It determined that due process did not require an opportunity to be heard prior to the *filing* of a mechanic's lien, because it did not prevent the owner "from selling, encumbering, renting or otherwise dealing with the property as he chooses" (p 35). Consequently, it did not work a deprivation of "any *significant property interest.*" The same cannot be said about the sale of plaintiff's automobile, which resulted in a total deprivation of her property interest therein.

Similarly, our decision in *IDS Leasing Corp. v Hansa Jet Corp.* (51 AD2d 536) has no application here. There we upheld the constitutionality of section 184 of the Lien Law, which merely confers a *possessory* lien in favor of a garageman on a motor vehicle lawfully in his possession for storage, maintenance or repair charges allegedly due. But in this case we are for the first time concerned with the constitutionality of the enforcement provisions of the statutes, which permit the *sale* of the vehicle and, hence, absolute deprivation of its use by the owner, without a hearing.

At our request the Attorney-General has appeared and filed a brief wherein it is urged, in defense of the statutes, that the enforcement provisions thereof do not provide for or require "State action" and, consequently, that any consideration of due process requirements is precluded.

In *Blye v Globe-Wernicke Realty Co.* (33 NY2d 15, 19-20, *supra),* the court also said: "The threshold question is, therefore, whether the requisite 'State action' is present.

"It is clear that private conduct will not invoke the constitutional guarantees of due process. But it is equally without doubt that, in some circumstances, the actions of a private citizen can become the actions of the State for purposes of the due process clause. *(Adickes v. Kress & Co.,* 398 U.S. 144, 169-171; *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 722.) For instance, State action, or action under color of State Law, has been readily found in racial discrimination cases * * * And in recent years, another theory of State action has emerged. It holds that the actions of private persons, when performing traditionally public functions, may be attributed to the State for purposes of the Fourteenth Amendment * * *

"In this State, the execution of a lien, be it a conventional security interest (Lien Law, § 207), a writ of attachment (CPLR art. 62), or a judgment lien (CPLR art. 52) traditionally

has been the function of the Sheriff. On this view, 'State action' can be found in an innkeeper's execution on his own lien * * * Then, too, it cannot be gainsaid that innkeepers are possessed of certain powers by virtue of section 181 of the Lien Law. By that token, their actions are clothed with the authority of State law *(United States v. Classic,* 313 U.S. 299, 326) and their actions may be said to be those of the State for purposes of the due process clauses."

Obviously, the garageman in executing his lien, like the innkeeper, is performing the traditional function of the Sheriff and is clothed with the authority of State law. State action may also be said to be involved because this record indicates that plaintiff's car was sold at public auction by a "duly licensed" auctioneer and that, after a lien sale, title would be registered by the New York State Department of Motor Vehicles only upon presentation of the auctioneer's bill of sale, accompanied by specific documentary proof of his right to sell the vehicle and a newspaper clipping advertising the sale.

There remains the question as to whether this is an appropriate situation for a class action. In view of the fact that subsequent complainants will be adequately protected under the principles of *stare decisis,* class action relief was properly denied by Special Term (see *Matter of Jones v Berman,* 37 NY2d 42; *Matter of Rivera v Trimarco,* 36 NY2d 747).

Accordingly, the order appealed from should be modified by granting plaintiff's motion for summary judgment to the extent of declaring sections 200, 201, 202 and 204 of the Lien Law to be unconstitutional. As so modified, the order should be affirmed, with $50 costs and disbursements, and the action remitted to the Supreme Court, Westchester County, for a trial on the issue of damages as raised by plaintiff's complaint and defendants' counterclaim.

HOPKINS, Acting P. J., MARTUSCELLO and LATHAM, JJ., concur.

Order of the Supreme Court, Westchester County, entered September 15, 1976, modified, on the law, by adding thereto, immediately following the words "is in all respects denied", the following: "except that summary judgment is granted to plaintiff declaring sections 200, 201, 202 and 204 of the Lien Law to be unconstitutional." As so modified, order affirmed, with $50 costs and disbursements to plaintiff payable by defendants and action remitted to the Supreme Court, West-

chester County, for further proceedings in accordance with the opinion of Mr. Justice DAMIANI.