OPINION OF THE COURT
William H. Pohlmann, J.
Can a resident at an adult home be evicted merely for refusing to take an annual physical examination? Does that resident have any due process right to counsel on the application to evict her if the State caused the application to be brought? These issues are raised in the instant proceeding pursuant to RPAPL article 7 to recover possession of certain premises at the Lincoln Rest Adult Home occupied by the respondent, Helen Kubus, a resident of such facility. Petitioners are the owners of the aforementioned facility which is situated in the Village of Ardsley in Westchester County. This proceeding was brought following the respondent’s refusal on more than one occasion to submit to an annual physical examination as required by the New York State Department of Social Services and the termination of the resident’s admission agreement with the Lincoln Rest Home.
That this court is empowered to entertain this application there is no question. (See RPAPL 701, 713-a; Social Services *281 Law, § 461-h.) This proceeding was duly commenced with respondent admitting service. Respondent did not appear on the return date set for the hearing but from the documents before the court she indicated that she refused to be examined because she did not feel ill. This refusal was first expressed on July 1, 1980, and thereafter continued despite the persistent urgings by petitioners to take a physical exam. The petitioners were reluctant to bring the instant proceeding[1] but did so after the Department of Social Services initiated a proceeding against them to assess a civil penalty because of the failure of one of their residents to have the required annual physical.
Before discussing the merits of the petition, this court feels compelled to consider respondent’s possible constitutional due process right to counsel. Specifically, if found indigent, would the due process and equal protection clauses of the State and Federal Constitutions require the appointment of counsel to represent respondent in this proceeding? As a general rule of law, it can be said that the right to counsel is predicated on the notion that when the State or a governmental body is proceeding against an individual person and the outcome may be a grievous loss of life, liberty or property, then due process of law requires that the individual be provided with counsel if one is wanted and cannot be afforded. (Gideon v Wainwright, 372 US 335; Argersinger v Hamlin, 407 US 25, 32, 37; Mempa v Rhay, 389 US 128; Matter of Ella B., 30 NY2d 352; People ex rel. Silbert v Cohen, 29 NY2d 12.)[2]
In mere private litigation, there is no such constitutional right to counsel due process requirement. However, there are situations where actions of private citizens become actions of the State for purposes of the due process clause thus triggering the constitutional right to counsel. (Evans v Newton, 382 US 296; Burton v Wilmington Parking Auth., 365 US 715; Adickes v Kress & Co., 398 US 144; Blye v Globe-Wernicke Realty Co., 33 NY2d 15; Sharrock v Dell Buick-Cadillac, 56 AD2d 446; cf. Matter of Madeline G. v David R., 95 Misc 2d 273, 275.) These situations are collectively referred to as the “state action” exception to the general rule noted.
Here, the instant proceeding was commenced after the Department of Social Services sought to assess a civil penalty against petitioners for continuing to maintain a patient in their *282 rest home who had not had the required annual physical. To be sure, the State is both interested and was a factor behind the application being brought. Nevertheless, this court does not conclude that there has been a sufficient enough involvement by the Department of Social Services to trigger a constitutional due process right to counsel. Unlike in the cited State action cases, none of the vast bureaucracy of the State (here, Department of Social Services) was involved on petitioners’ behalf. Moreover, the requirement of an annual physical was also an integral part of the admission agreement between the Lincoln Rest Adult Home and respondent, and is there for the protection of the other residents of the adult facility. Petitioners would be required to proceed with this application for their benefit even if the Department of Social Services did not urge this proceeding. Finally, if the right to counsel is to be extended to situations such as here, it should be by a higher appellate court.
Turning to the merits of the instant application, this court is confronted with a 57-year-old woman who refused to take a medical examination. Section 461-g of the Social Services Law provides, in pertinent part, that no adult home such as that involved in this proceeding shall terminate the admission agreement of any resident of such facility except for certain specified reasons. Among the reasons permitting termination are where the behavior of the resident “poses imminent risk of death or imminent risk of serious physical harm to such resident or any other person” (Social Services Law, § 461-g, subd 1, par [b]) or “directly impairs the well-being, care or safety of the resident or any other resident or which substantially interferes with the orderly operation of the facility”. (Social Services Law, § 461-g, subd 1, par [d].) None of the other reasons would appear to be relevant.
In the instant proceeding, no medical proof was submitted to this court to indicate that respondent posed a certain risk to any other resident or even possibly impaired their safety. While it may be argued that no possible medical risk or impairment of the safety of other residents can be ascertained without periodic medical examinations of the residents, including respondent, the statute contains no such reason as a permissible basis for terminating the admission agreement.[3] However, the orderly operation of running an adult rest home requires adherence to the admissions agreement and the rules set down by the Department of Social Services. Both require that there be an annual physical examination. When a waiver of that requirement was *283 sought, it was denied by the Department of Social Services. In its denial it was noted: “The resident has a signed admission agreement in which she has agreed to obtain an annual medical. If the resident’s mental condition is such that she cannot comprehend the need for a medical, then this condition may indicate the need for a higher level of care. Also, other residents and staff may be harmed if this resident has a serious communicable disease that has not been detected.”
Clearly, the annual physical examination is important in the orderly operation of petitioners’ facility, as well as being a crucial part in the over-all statutory scheme of supervision of adult homes by the Department of Social Services. Accordingly, this court rules that the respondent’s apparent arbitrary refusal to take an annual physical examination as required by the signed admission agreement “substantially interferes with the orderly operation of the facility” and may well impair the care or safety of both respondent and other residents of the Lincoln Rest Adult Home.
The petition is granted. The issuance of any warrant to remove respondent from the subject premises is, however, stayed for 30 days from the date judgment is signed. (Social Services Law, § 461-h, subd 12, par [b].) To insure that the respondent understood the nature and seriousness of the proceedings, as well as of her position of refusing to take an annual physical examination, this court feels duty bound to personally visit the respondent at the Lincoln Rest Adult Home during the first week of December, 1984,[4] unless a valid objection to such visit is raised prior to such time.

. Petitioners, on behalf of respondent, Kubus, sought a waiver of the annual physical examination requirement, but such application was denied.

. Concomitant to the right to counsel is the right to be advised of such right.

. This apparent oversight is for the Legislature to correct.

. There is no indication in the papers concerning the respondent’s intelligence, which might bear on her ability to make any decision, nor is there any indication as to whether respondent is ambulatory. In view of the nature of the proceeding and the fact that she is a resident of an adult rest home, a personal visit is warranted. The authority to appoint and authorize payment for a guardian ad litem is questionable.