Chief Judge Fuld.
 

 In
 
 People ex rel. Menechino
 
 v.
 
 Warden
 
 (27 N Y 2d 376), this court held that adult parolees are constitutionally entitled to the assistance of counsel in parole revocation hearings. (See, also,
 
 People ex rel. Maggio
 
 v.
 
 Casscles,
 
 28 N Y 2d 415. )
 
 [1]
 
 On this appeal, we must decide whether juvenile delinquents have a similar right to a hearing and the aid of an attorney.
 

 In November of 1966, Anthony R. and Roderick R. were adjudged juvenile delinquents and subsequently placed on probation. In July, 1967, their probation was revoked and they were later placed in Highland State Training School for a period
 
 *14
 
 of 18 months. Roderick was paroled in June, 1968 and Anthony in October, 1968. When they were paroled, neither they nor their parents were advised of the conditions of parole. In June, 1970, new juvenile delinquency petitions, alleging acts of assault and petit larceny, were filed against both boys. Although the charges were dismissed, their parole was revoked, pursuant to section 437 of the Social Services Law (formerly the Social Welfare Law), and that revocation was upheld by the Family Court without a hearing and the boys were returned to the training school. The boys ’ law guardian, who had urged the court to grant revocation hearings, thereupon sued out writs of habeas corpus on their behalf, claiming that the refusal to permit such hearings constituted a denial of due process. The court at Special Term denied the requested relief but, on appeal, the Appellate Division reversed, sustained the writs and ordered both boys discharged from custody. It was the Appellate Division’s conclusion that “ [r] evocation of parole, whether of a juvenile or an adult, is a deprivation of liberty [and that] due process requires that a fair hearing precede such deprivation ”. (36 AD 2d 331, 332.)
 

 As we indicated in
 
 Menechino
 
 (27 N Y 2d, at p. 382), a parolee may not again be deprived of his liberty unless the Parole Board decides, after a hearing, that he has violated his parole. The hearing to be accorded him is, we declared, “ an accusatory proceeding in which the outcome—liberty or imprisonment — is dependent upon the board’s factual determination as to the truth of specific allegations of misconduct.” This being so, the proceeding involves a deprivation of liberty just as much as did the original criminal action and, by that token, falls within the protective ambit of due process.
 

 The right to be heard would be “of little avail if it did not comprehend the right to be heard by counsel”
 
 (Powell
 
 v.
 
 Alabama,
 
 287 U. S. 45, 68-69), and no tribunal, whether board or court, should be allowed to base its determination on a possibly mistaken view of the facts owing to the parolee’s inability, absent counsel, to make a proper factual presentation. It is for such a reason, among others, that the right to a lawyer, far from being limited to the narrow confines of criminal prosecutions, has been treated “ as an essential element of due process applicable to all proceedings, whether they be
 
 *15
 
 classified as civil, criminal or administrative, where individual liberty is at stake.”
 
 (People ex rel. Menechino
 
 v.
 
 Warden,
 
 27 N Y 2d 376, 383,
 
 supra.)
 

 Since due process demands notice, a hearing and the aid of counsel, it is beside the point that there is no statute requiring that a juvenile be afforded a hearing in a parole revocation proceeding. As a matter of fact, section 437 of the Social Services Law actually authorizes the revocation of parole and the return of the juvenile to a training school without any hearing whatsoever. Indeed, in the two cases before us, neither the hoys, their father nor their law guardian were ever informed as to what the conditions of parole were, much less the conditions which had been assertedly violated; even the Family Court judge who upheld the revocation of their parole was not sure of the reasons for such action.
 

 The circumstance that we deal with a juvenile rather than an adult does not call for a different result. The Supreme Court expressly stated in
 
 In re Gault
 
 (387 U. S. 1, 10) that, before a ‘
 
 ‘
 
 juvenile is taken from the custody of his parents and committed to a state institution pursuant to proceedings in which the Juvenile Court has virtually unlimited discretion,” fundamental fairness and due process require that
 
 “
 
 the following basic rights” he accorded him:
 
 “
 
 1. Notice of the charges; 2. Right to counsel; 3. Right to confrontation and cross-examination; 4. Privilege against self-incrimination; 5. Right to a transcript of the proceedings; and 6. Right to appellate review.” Insistence upon such procedural safeguards will not undercut or interfere with the Family Court’s goal of rehabilitation.
 

 The Attorney-General contends that the requisite hearing should be informal. As long as the juvenile has an opportunity to rehut the charge leveled against him and as long as his attorney is able to ask questions that test the testimony offered against him, due process is assured. It is, of course, difficult to mandate “ informality.” The type of hearing, its length and its character must be left to the sound discretion of the judge who will be called upon to review the scope of such hearing and, in this connection, the Supreme Court’s language in
 
 Gault
 
 is instructive. “ It is urged ’ ’, the court stated, ‘
 
 ‘
 
 that the juvenile benefits from informal proceedings in the court. The early conception of the Juvenile Court proceeding was one in which a fatherly judge touched the heart and con
 
 *16
 
 science of the erring youth by talking over his problems, by paternal advice and admonition, and in which, in extreme situations, benevolent and wise institutions of the State provided guidance and help ‘ to save him from a downward career. ’ Then, as now, goodwill and compassion were admirably prevalent. But recent studies have, Avith surprising unanimity, entered sharp dissent as to the validity of this gentle conception. They suggest that the appearance as well as the actuality of fairness, impartiality and orderliness—-in short, the essentials of due process—may be a more impressive and more therapeutic attitude so far as the juvenile is concerned” (387 U. S., at pp. 25-26).
 

 Nor does
 
 Matter of D. (Daniel)
 
 (27 N Y 2d 90, cert. den. 403 U. 8. 926), in which the court decided that a jury trial in cases involving juvenile delinquents was not constitutionally required, point or suggest a result at odds with our conclusion. Fully recognizing that
 
 Gault
 
 (387 U. S. 1,
 
 supra)
 
 mandated such due process rights as notice of charges, the right to counsel and the right to confrontation and cross-examination, the court did no more than, in effect, make a value judgment that trial by jury was not similarly guaranteed by the Due Process Clause since “it would make delinquency adjudications unwieldy and disruptive ” (27 N Y 2d, at p. 95).
 

 There is no warrant for the fear that to give the juvenile a right to such basic procedural safeguards will provoke friction in the hopefully beneficent relationship between him and his social worker and, certainly, no justification for the belief that a hearing and the presence of an attorney will unduly prolong the parole revocation proceeding or transmute it into a full-blown trial. A laAvyer’s assistance is needed in order to marshal the facts and introduce evidence of mitigating circumstances, in short, to help the juvenile to present his case. (Cf.
 
 Mempa
 
 v.
 
 Rhay,
 
 389 U. S. 128, 134.) To paraphrase what we Avrote in
 
 Menechino
 
 (27 N Y 2d 376, 383,
 
 supra),
 
 participation by counsel need be no greater than is required to assure, to the court as well as to the parolee, that the court is accurately informed of the facts and the presentation of testimony need be no greater than is necessary for the same purpose.
 

 
 *17
 
 The closing words in the
 
 Menechino
 
 case bear repetition. “ [T]he parole system ”, we stated (27 N Y 2d, at pp. 385-386), “is an enlightened effort on the part of society to rehabilitate convicted criminals. Although few circumstances could better further that purpose than a belief on the part of such offenders in a fair and objective parole procedure, hardly anything could more seriously impede progress toward that important goal than a belief on their part that the law’s machinery is arbitrary, too busy or impervious to the facts. The desired end can become a reality only by requiring obedience to the demands of due process and granting parolees a hearing at which they will be represented by counsel.” And this observation takes on added importance when children are involved.
 

 The order appealed from should be affirmed, without costs.
 

 Judges Burke, Bergan and Gibson concur with Chief Judge Fuld; Judges Scileppi, Breitel and Jasen concur in result only on constraint of
 
 People ex rel. Menechino
 
 v.
 
 Warden
 
 (27 NY 2d 376).
 

 Order affirmed.
 

 [1]
 

 . The United States Court of Appeals for the Second Circuit (per Kaufman, J.), just a few weeks ago, followed our decision in
 
 Menechino
 
 on substantially similar reasoning. (See
 
 United States ex rel. Bey
 
 v.
 
 Connecticut State Bd. of Parole,
 
 443 F. 2d 1079.) A like result was also reached, a month after
 
 Menechino,
 
 by a Federal District Court in Wisconsin. (See
 
 Goolsby
 
 v.
 
 Gagnon,
 
 322 F. Supp. 460.)