88 N.Y.2d 593 (1996)
671 N.E.2d 1247
648 N.Y.S.2d 850
In the Matter of Edwin L., a Person Alleged to be a Juvenile Delinquent, Appellant.
Court of Appeals of the State of New York.
Argued June 5, 1996.
Decided July 9, 1996.
Patricia S. Constantikes, New York City, Jane M. Spinak and Adrian Lesher for appellant.
Paul A. Crotty, Corporation Counsel of New York City (Linda H. Young and Pamela Seider Dolgow of counsel), for respondent.
Robert M. Morgenthau, District Attorney of New York County, New York City (Patrick J. Hynes and Grace Vee of counsel), pro se, amicus curiae.
Chief Judge KAYE and Judges SIMONS and BELLACOSA concur with Judge SMITH; Judge LEVINE dissents in a separate opinion in which Judges TITONE and CIPARICK concur.
*597 SMITH, J.
Appellant contends that before finding that a juvenile has violated the conditions of an adjournment in contemplation of dismissal (ACD), procedural due process principles require Family Court to conduct a hearing, at which hearsay evidence may be considered only after a finding of good cause by the court to dispense with the confrontation of witnesses. Since neither the Family Court Act nor the requirements of procedural due process impose such restrictions upon the discretion of the Family Court to vacate an ACD order, we affirm the order of the Appellate Division. The inquiry conducted by the Family Court here in determining whether appellant violated the conditions of the ACD satisfied the requirements of due process and the presentment agency presented sufficient evidence of violations.
Respondent presentment agency filed two petitions, arising out of separate incidents, charging appellant, who was 13 years old at the time, with conduct which would have constituted crimes if committed by an adult. Based on appellant's admissions, Family Court issued fact-finding orders that appellant's acts would have constituted the crimes of possession of burglar's tools under one petition, and criminal mischief in the fourth degree and possession of burglar's tools under the second petition, if committed by an adult.
At the dispositional hearing, appellant, with the agreement of the presentment agency, sought an ACD for both petitions. Family Court granted appellant's request and issued one ACD order, dated June 12, 1992, for both petitions. The ACD order specified three conditions. Appellant was required to (1) attend school while at Graham Windham, a residential facility; (2) continue residing at Graham Windham unless and until adopted; and (3) avoid further contact with court. Upon granting the ACD, Family Court spoke directly to appellant, stating,
"All right, Edwin, you understand that if within *598 six months you have no further contacts with the law and you are not re-arrested and you are not brought before the Family Court again that this matter, at the end of six months, will be dismissed and ultimately you will start with your record back again."
In December 1992, the presentment agency filed a petition alleging that appellant had violated two conditions of the ACD and seeking to vacate the ACD order. The violation petition alleged that appellant had failed to comply with the conditions that he continue to reside at Graham Windham, and have no further contacts with court, by failing to abide by Graham Windham's rules and regulations, and being arrested. An arrest report was attached to the petition.
The supporting deposition accompanying the violation petition was sworn to by the security manager at Graham Windham and stated,
"I observed [appellant] engage in the following activities:
"[Appellant] has been AWOL [absent without leave] from the facility on 8/31/92 and 11/13/92 [and] both times he was arrested.
"[Appellant] is disrespectful to the staff at Graham Windham.
"Beginning in July 1992 behavior in school deteriorated and cooperation with counseling dwindled.
"[Appellant] is beyond the control of the staff at Graham Windham [and] needs a more structured facility."
On December 10, 1992, the parties appeared before Family Court on the violation petition. Appellant argued that the petition failed to allege a violation of the conditions of the ACD. Appellant also argued that he was entitled to a hearing, equivalent to hearings conducted for parole or conditional discharge violations, to determine whether appellant had violated the terms of the ACD order. The presentment agency appeared with a Graham Windham caseworker and stated readiness to elicit testimony from the caseworker regarding the allegations in the petition if necessary.
Family Court found the petition jurisdictionally sufficient and adjourned the proceedings to December 14, 1992 for a hearing *599 on whether the ACD order should be "revoked." On December 14, a Graham Windham caseworker testified that since the issuance of the ACD order, appellant had gone AWOL from Graham Windham several times, been arrested on more than one occasion, and fought with other residents. The caseworker testified that she knew of appellant's arrests by reviewing police reports and that she had not personally witnessed appellant go AWOL. She also testified that not all of the information regarding violations of Graham Windham rules were obtained by her from other sources. At times, the caseworker refreshed her recollection from papers in her possession.
Appellant moved to strike all of the caseworker's testimony on the ground that it was based on hearsay. The motion was denied. Appellant's motion to dismiss the violation petition was also denied. Family Court found that appellant had failed to abide by the rules and regulations of Graham Windham by going AWOL "numerous" times and fighting with other residents. The court also found that appellant had violated the condition that he have no further contact with court by being arrested twice since the ACD was granted. Family Court vacated the ACD order and restored the matter to the calendar. Appellant subsequently waived his right to the dispositional hearing and consented to placement with the Division for Youth for one year. The dispositional orders for both petitions were entered on January 8, 1993.
Appellant appealed the dispositional orders and the Appellate Division affirmed. The Appellate Division found that Family Court had not abused its discretion in vacating the ACD order. The Appellate Division also held that the hearing conducted by Family Court satisfied procedural due process requirements. Appellant appealed to this Court as of right on constitutional grounds.
Appellant argues that the ACD was equivalent to a dispositional order because the ACD was granted after fact-finding orders on the petitions were issued. Analogizing the ACD to parole and probation, appellant contends that he should have received the procedural protections accorded defendants and juveniles in parole revocation and probation violation hearings. Appellant contends that he was deprived of procedural due process because Family Court permitted hearsay testimony at the hearing on the violation petition without first finding good cause to dispense with the confrontation of witnesses.
*600 Section 315.3 of the Family Court Act provides, in relevant part,
"1. Except where the petition alleges that the respondent has committed a designated felony act, the court may at any time prior to the entering of a finding under section 352.1 and with the consent of the respondent order that the proceeding be `adjourned in contemplation of dismissal'. An adjournment in contemplation of dismissal is an adjournment of the proceeding, for a period not to exceed six months, with a view to ultimate dismissal of the petition in furtherance of justice. Upon issuing such an order, providing such terms and conditions as the court deems appropriate, the court must release the respondent."
An ACD order may be issued on the ex parte motion of the presentment agency, sua sponte by the court, or on motion of the juvenile (Family Ct Act § 315.3 [3]).
In Mathews v Eldridge (424 US 319), the United States Supreme Court set forth a balancing test for determining whether a State has provided adequate due process protections in a particular case. The private interest at stake and the risk of an erroneous deprivation of that interest, or the value, if any, of additional or substitute safeguards, must be balanced against the State interest embodied in the challenged statute (id., at 335; see also, Curiale v Ardra Ins. Co., 88 N.Y.2d 268).
Although an ACD resembles the dispositions of conditional discharge and probation (see, Family Ct Act § 352.2), because a juvenile's continued freedom is contingent on the satisfaction of certain conditions, an ACD is not a disposition of a juvenile delinquency proceeding. Unlike dispositional orders, which may only be issued after the conclusion of a dispositional hearing and a finding that a juvenile requires "supervision, treatment or confinement" (Family Ct Act § 352.1), an ACD may only be granted to a person who has not been adjudicated a juvenile delinquent (see, Family Ct Act § 315.3 [providing that the court may order an ACD "at any time prior to the entering of a finding under section 352.1"]; § 352.1 [court may issue a finding that a person is a juvenile delinquent after the conclusion of the dispositional hearing]; § 352.2 [listing orders of disposition]).
The consequences of a dispositional order, even if the order imposes minimal restraints on the juvenile's liberty (such as *601 conditional discharge or probation) differ significantly from the consequences resulting from an ACD order. Since dispositional orders follow upon the entry of a delinquency finding, the records of the juvenile delinquency proceedings are not sealed and the finding may constitute a predicate offense. In contrast, an ACD order, whether issued before or after fact finding, provides a juvenile with the opportunity to purge the record of any evidence of wrongdoing since an ACD will result in the dismissal of the petition (see, Family Ct Act § 375.1; Sobie, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 353.1, at 523-524). Even if violation of the ACD's conditions may ultimately result in a dispositional order, the ACD order does not, ab initio, have the same effect.
Moreover, upon vacatur of an ACD order, Family Court must conduct a dispositional hearing, and any dispositional order which may result is subject to judicial review. In contrast, no new dispositional hearing is required upon a finding that a juvenile delinquent has violated the conditions of probation or a conditional discharge (see, Family Ct Act § 360.3 [6]). Given these material differences between ACD and dispositional orders, appellant's contention that he is entitled to the same procedural protections afforded probationers and parolees is unpersuasive.
The dissent argues that the liberty interest of a juvenile who has received an ACD is "indistinguishable from the conditional liberty interest of a parolee or probationer." (Dissenting opn, at 613.) However, this conclusion disregards the material differences between an ACD and a dispositional order. Even when an ACD is granted after fact finding, there is no correlative verdict of "guilt" which permits disposition, i.e., the juvenile has not been adjudicated a delinquent. Thus, Family Court's "dispositional" discretion within the meaning of the Family Court Act is held in abeyance pending the ACD. If the ACD proceeds uneventfully, the court will not exercise its dispositional powers because the petition is dismissed.
Similarly, in the adult context, an ACD is neither an acquittal nor a conviction (Hollender v Trump Vil. Coop., 58 N.Y.2d 420). Moreover, an ACD in adult criminal proceedings is unavailable once fact finding has occurred. An ACD may be granted only before the entry of a guilty plea or the commencement of trial (CPL 170.55 [1]). Thus, the ACD in juvenile delinquency proceedings affords the juvenile greater latitude in expunging any record of wrongdoing by effectively permitting *602 the parties to act as if fact finding had not occurred and that dismissal of the petition may ultimately be warranted.[1]
As a practical matter, the issuance of an ACD is a suspension of the proceedings. A vacatur of the ACD order merely brings the juvenile back to the same circumstances he would have faced after the conclusion of fact finding. The only loss the ACD juvenile has suffered, which other juveniles proceeding to disposition after adverse fact findings have not, is the possibility that the petition will be dismissed. Thus, contrary to the dissent's assertion, the juvenile does not suffer a "`grievous loss'" (see, dissenting opn, at 615). Like other juveniles, the juvenile whose ACD has been vacated is entitled to a dispositional hearing with its attendant procedural protections.
Appellant's circumstances are more analogous to those encountered by the defendants in People v Outley (80 N.Y.2d 702), where we considered the level of due process protection required for defendants who were accused of violating a condition of their plea agreements. Outley involved three unrelated cases where the trial courts, in accepting defendants' guilty pleas, agreed to impose certain sentences on condition that the defendants not be arrested during release while awaiting sentencing. The defendants were arrested prior to their sentencing dates and, in each case, the trial court imposed a greater sentence than conditionally agreed to at the plea proceeding.
The defendants in Outley argued that due process principles required that trial courts conduct an evidentiary hearing and establish, by a preponderance of the evidence, that defendants had committed the crimes for which they were arrested before the no arrest condition could be deemed breached. We rejected this contention and held that although the mere fact of arrest would not be sufficient to establish a violation of the conditional sentencing agreement, where an issue concerning the validity of the postplea charge exists, or where a defendant denies involvement in the underlying crime, any inquiry which satisfies the court that a legitimate basis for the arrest exists provides sufficient due process.
Like the defendants in Outley who admitted the factual predicates for their crimes, the appellant here admitted the factual allegations of the petitions. Moreover, like the *603 defendants in Outley, the expected resolution of appellant's case was contingent upon the satisfaction of certain conditions known to appellant.
We hold that the requirements of procedural due process are satisfied when a Family Court determines, after conducting an inquiry into the allegations of the violation petition, and providing the juvenile with the opportunity to respond to those allegations, that there is a legitimate basis for concluding that a juvenile has violated a condition of an ACD order and states the reasons, on the record, for reaching that determination. The form and extent of the inquiry necessary to determine the existence of a legitimate basis for vacating an ACD order will vary according to the particular circumstances of each case, and lie within the discretion of the Family Court. However, a more detailed inquiry will be required where a juvenile denies the factual basis of an alleged violation than in cases where such issues have not been raised. Here, there was a hearing with an opportunity for cross-examination.
The legitimate basis test preserves the wide discretion accorded Family Court by the Family Court Act to fashion appropriate relief in the context of juvenile delinquency proceedings, while satisfying the principles of due process enunciated in Eldridge. The consequences attendant upon the vacatur of an ACD order are the commencement of a dispositional hearing and the entry of a dispositional order. Since it is likely that a juvenile will receive a disposition more restrictive than the terms of an ACD, appellant has an attenuated liberty interest in the least restrictive dispositional order available under the Family Court Act  a conditional discharge (where the ACD does not contemplate supervision by the Department of Probation) or probation (see, Family Ct Act § 352.2 [1]). The interest is attenuated because at the conclusion of fact finding, a juvenile does not possess a vested liberty interest in an ACD, and the dispositional hearing provides sufficient due process for a dispositional order.
Furthermore, the risk of an erroneous deprivation of the juvenile's attenuated liberty interest is low. Family Court must be satisfied that there is a legitimate basis for concluding that a juvenile has violated the conditions of an ACD, and the juvenile is provided with the opportunity to respond to the allegations. The next step, disposition, may not occur without a dispositional hearing, and any dispositional order which issues is subject to judicial review. Thus, the juvenile has two opportunities to protect the limited liberty interest at stake, once *604 during Family Court's inquiry into the existence of an ACD condition violation, and a second time at the dispositional hearing.
As noted previously, Family Court may grant an ACD on its own motion, or on the ex parte motion of the presentment agency or the juvenile, without a dispositional hearing. Moreover, we do not question the Family Court's discretion to hold a hearing in an appropriate case before an ACD may be vacated and the case restored to the calendar. The difference between the majority and the dissent is (1) whether a hearing is required in every instance before an ACD order is vacated and (2) whether a good cause finding is necessary before admitting hearsay evidence at such a hearing. Requiring a constitutionally mandated good cause finding introduces unnecessary complexity into the process of granting and vacating ACD orders. Grafting additional and unnecessary requirements onto the ACD process will only decrease incentives to utilize this method of resolving delinquency petitions to the detriment of all parties, including the juvenile. Finally, the State interest in speedily vacating an ACD order once a juvenile has violated the conditions of the ACD is high, given the legislative mandate that there be a swift determination of charges brought against juveniles (see, Matter of Willie E., 88 N.Y.2d 205).
The dissent's reliance on Morrissey v Brewer (408 US 471) is misplaced. The defendants in Morrissey were convicted and served a portion of their sentences before being released on parole. Thus, unlike the appellant, who had not been adjudicated a delinquent and whose interest in dismissal of the petition evaporated upon vacatur of the ACD order, the Morrissey defendants had been sentenced, deprived of their liberty, then conditionally released. Because the Morrissey defendants had been incarcerated, revocation of parole had the consequence of returning them to imprisonment. Here, vacatur of the ACD entitled appellant to a dispositional hearing before he could be found delinquent and "sentenced." Consequently, the liberty interests of a juvenile who faces vacatur of an ACD is not analogous to the conditional liberty interest of a parolee.
Moreover, the parole of the Morrissey defendants was revoked upon written reports by parole officers to the Iowa Parole Board, an administrative agency. The Supreme Court held that under these circumstances minimum requirements of due process required that a parolee be provided with,

*605 "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a `neutral and detached' hearing body * * *; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole" (Morrissey, at 489).
The legitimate basis test provides many of the procedural protections enumerated by the Morrissey Court, and adequately protects the attenuated liberty interest of juveniles who have been granted ACDs.
A juvenile receives notice of an alleged violation of an ACD condition by a violation petition which must be verified and contains the factual basis for the allegations in the petition. In conducting the inquiry into the existence of a legitimate basis for vacating the ACD order, Family Court must provide the juvenile with an opportunity to respond to the allegations in the petition. Family Court, a judicial body, is the "neutral and detached" party which will determine whether an ACD order should be vacated and is required to state the basis for its decision on the record. Moreover, the Morrissey Court explicitly permitted consideration of hearsay evidence, including "letters, affidavits, and other material that would not be admissible in an adversary trial" (id.) in the parole revocation decision. Similarly, Family Court should be permitted to consider hearsay evidence in determining whether an ACD condition has been violated.
Applying the legitimate basis test to the circumstances of this case, we conclude that Family Court's vacatur of appellant's ACD order was proper. Although a hearing is not required in every case, Family Court held a hearing here to determine if there was a basis for vacating its ACD order. Appellant received the opportunity to contest the allegations of the violation petition at the hearing and cross-examined the only witness who testified, a caseworker at Graham Windham who was familiar with appellant's case.
*606 Based on her own knowledge and on information obtained from documents which she had reviewed,[2] the caseworker testified that appellant had been arrested, gone AWOL from the facility and fought with other residents. The record reflects that appellant did not deny the basis or the occurrence of any incidents alleged in the petition even though provided with that opportunity at the hearing. Consequently, there is no contrary evidence in the record refuting the testimony of the caseworker or the arrest report attached to the violation petition. Under these circumstances, the quantum of evidence was sufficient to establish the violations.
Instead of denying the allegations of the violation petition, appellant argued that the incidents did not violate the conditions stated in the ACD order because an arrest did not constitute contact with court, and appellant continued to reside at Graham Windham until the facility determined that appellant could no longer stay there. Neither contention has merit.
Family Court specifically informed appellant at the time that the ACD was granted that the petitions would be dismissed if "within six months you have no further contacts with the law and you are not re-arrested and you are not brought before the Family Court again." Under these circumstances, appellant's arrests constituted a violation of the ACD order. Since appellant did not deny the factual circumstances of his arrests, no issue as to the propriety of the arrests was raised and the arrest report attached to the petition and the testimony of the caseworker were sufficient to establish this violation.
The condition that appellant continue residing at Graham Windham contains an implicit requirement that appellant follow the rules and regulations of the facility. Thus, the evidence presented by the presentment agency that appellant had gone AWOL and fought with residents was sufficient to establish additional violations of the ACD order. Appellant cannot complain of being involuntarily ejected from Graham Windham when his own conduct rendered continued residence at Graham Windham inappropriate.
Accordingly, the order of the Appellate Division should be affirmed, without costs.
LEVINE, J. (dissenting).
We respectfully dissent. The conditional *607 liberty interest of a juvenile released subject to the conditions imposed by a post-fact-finding adjournment in contemplation of dismissal is essentially the same as that of a probationer or parolee. Therefore, we would hold that the procedural due process protections accorded such defendants in Morrissey v Brewer (408 US 471) and Gagnon v Scarpelli (411 US 778), including a hearing at which the juvenile has "the right to confront and cross-examine adverse witnesses (unless the [court] specifically finds good cause for not allowing confrontation)" (Morrissey v Brewer, supra, at 489 [emphasis supplied]; accord, People ex rel. McGee v Walters, 62 N.Y.2d 317), are required before a final determination that the juvenile has violated the conditions of the ACD can be made.
Edwin L. admitted to committing acts which if committed by an adult would have constituted the crimes of criminal mischief and possession of burglar's tools. Subsequent to this fact-finding stage, the court issued an order adjourning the proceeding for six months in contemplation of dismissal in furtherance of justice. As statutorily provided, the issuance of the ACD compelled the juvenile's release (see, Family Ct Act § 315.3 [1] ["Upon issuing such an order * * * the court must release the respondent."]). As further permitted by Family Court Act § 315.3, Edwin L.'s release was subject to specific conditions: he was required to attend school at his current residential placement, to continue residing there until or unless adopted, and to avoid further contact with the court. At the end of the adjournment period, unless the matter was earlier restored to the calendar, the petition would be "deemed" dismissed in furtherance of justice (Family Ct Act § 315.3 [1]).
However, shortly before the six-month ACD period was to expire, the presentment agency filed a petition alleging that Edwin L. had violated various conditions of the ACD order and seeking to restore the matter to the calendar for a dispositional hearing. The violation petition was supported by an arrest report and a sworn deposition from the security manager at Edwin L.'s residential placement facility, purporting to be based on firsthand knowledge of the juvenile's alleged violations. Family Court upheld the petition against a facial attack, but agreed that due process required a hearing to determine whether any of the conditions of the ACD order had in fact been violated. The court reasoned that it could "not tak[e] as tru[e] the allegations [of the violation petition] unless [it] ha[d] some testimony" on the matter.
At the subsequent ACD violation hearing, the presentment agency did not call as a witness the deponent from the *608 juvenile's residential placement facility (who claimed firsthand knowledge of the alleged violations) nor did it seek to introduce as business records any documentary evidence concerning the alleged arrests or any other violations. Instead, the presentment agency put on only one witness, a social worker employed at Edwin L.'s residential facility, who, over repeated hearsay objections, testified from written reports as to the juvenile's arrests and his having violated the school's rules and regulations. The juvenile's Law Guardian cross-examined the social worker regarding the specifics of the alleged ACD order violations and the basis of the witness' knowledge; the witness expressly conceded that she had no firsthand knowledge of Edwin L.'s arrests or of his going AWOL from the residential facility. Although the witness denied in conclusory fashion that all of her information regarding facility rule violations was hearsay, she never identified which violations she had direct knowledge of or how she had acquired that knowledge.
Thus, despite the majority's statement that the social worker witness testified "[b]ased on her own knowledge and on information obtained from documents which she had reviewed" (majority opn, at 606 [emphasis supplied]), the fact is that her personal knowledge was never demonstrated as to any of the alleged violations; moreover, contrary to the implications of the majority's statement, it was clear that the witness in fact had no personal knowledge of the arrests and AWOL incidents, which were the more serious violations, and the most relevant to any decision to terminate Edwin L.'s ACD. Even the majority recognizes the weak foundational basis for the witness' testimony when it admonishes that the records upon which the witness relied "should have been introduced into the record" (majority opn, at 606, n 2).
Additionally, Family Court's reliance on solely hearsay evidence cannot be overcome by the lack of contrary evidence refuting the testimony of the social worker or the fact that Edwin L. did not "deny[] the allegations of the violation petition" (majority opn, at 606). The presentment agency sought to restore the matter to the calendar on the basis of violations of conditions imposed by the ACD order. The respondent juvenile had no statutory obligation to testify on his own behalf and had no burden to disprove the allegations in the violation petition. The agency, and not the juvenile, had the burden to demonstrate that those violations had occurred, and by challenging the soundness of the factual basis of those allegations through evidentiary objections and cross-examination, Edwin L. rightfully *609 sought to put the agency to its burden of proof. Under these circumstances, Edwin L.'s mere silence cannot be transformed into an admission that he had committed the alleged condition violations. The majority's reliance on his failure to deny the specific allegations or to introduce evidence to refute the social worker's testimony is inappropriate and contrary to our basic adversarial jurisprudence in juvenile justice as well as criminal justice (see, In re Gault, 387 US 1).
Thus, contrary to the majority's position, the "legitimate basis" inquiry of People v Outley (80 N.Y.2d 702) has no application to the circumstances of this case. In Outley, the three defendants were promised lenient sentences conditional on not being arrested before the sentencing hearing. All three defendants conceded the factual existence of a facial violation of their conditional release (their subsequent arrests) (see, id., at 713-714) and did not challenge the validity of a "no-arrest" condition to a plea and sentence agreement (id., at 713). They argued instead that they were entitled to an evidentiary hearing on whether they had in fact committed the criminal acts for which they were arrested. Thus, the issue presented in that case was the minimum due process requirement when "the defendant has breached a no-arrest condition by being arrested before the sentence but denies any complicity in the underlying crime" (id., at 712 [emphasis supplied]). Here, in contrast, the issue is what procedural due process protections are required to establish the existence of a condition violation, since there is no legitimate basis to conclude that Edwin L. conceded or admitted that he had violated any of the conditions of his ACD order.
The issue thus remains whether Edwin L. was accorded sufficient process prior to the determination that he had violated the conditions of the ACD order and prior to the entry of the dispositional order. In our view, Morrissey v Brewer (408 US 471, supra), sets forth the controlling principles for deciding that issue.
In Morrissey v Brewer the Supreme Court resolved whether due process protections apply to a revocation of parole and if so, what process is constitutionally required. The Court noted that parole is essentially rehabilitative in nature and is designed to enable convicted defendants to participate as constructive members of their community as soon as they are safely able (id., at 477). To that end, parolees are released from confinement subject to specified conditions to reinforce good behavior. The enforcement mechanism inherent in the parole *610 system is the ability to return the parolee to prison if the conditions of release are violated (id., at 478). Thus, the parolee "is entitled to retain his liberty as long as he substantially abides by the conditions of his parole" (id., at 479). The Court recognized, however, that "not every violation of parole conditions automatically leads to revocation. * * * [O]rdinarily [steps will not be taken] to have parole revoked unless * * * the violations are serious and continuing so as to indicate that the parolee is not adjusting properly and cannot be counted on to avoid antisocial activity" (id., at 479).
Accordingly, the Court in Morrissey described the parole revocation process as actually involving a two-step inquiry, first, a determination whether in fact a violation occurred, and second, a judgment on the appropriate institutional response, which itself requires an accurate resolution of the first inquiry.
"The first step in a revocation decision thus involves a wholly retrospective factual question: whether the parolee has in fact acted in violation of one or more conditions of his parole. Only if it is determined that the parolee did violate the conditions does the second question arise: should the parolee be recommitted to prison or should other steps be taken to protect society and improve chances of rehabilitation? * * * The second question involves the application of expertise by the parole authority in making a prediction as to the ability of the individual to live in society without committing antisocial acts. This part of the decision, too, depends on facts, and therefore it is important for the board to know not only that some violation was committed but also to know accurately how many and how serious the violations were" (id., at 479-480 [emphasis supplied]).
The Court then went on to hold that "[i]mplicit in the system's concern with parole violations is the notion that the parolee is entitled to retain his liberty as long as he substantially abides by the conditions of his parole," and for this reason, "[parole r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions" (id., at 479-480).
In examining whether due process attaches to this conditional liberty interest, the Court rejected the notion that labeling *611 parole a privilege rather than a right would be determinative (id., at 481, citing Graham v Richardson, 403 US 365, 374). Rather, the inquiry focuses on "the extent to which an individual will be `condemned to suffer grievous loss'" (id., quoting Joint Anti-Fascist Refugee Comm. v McGrath, 341 US 123, 168 [Frankfurter, J., concurring]). Thus, in concluding that the nature of the parolee's liberty interest falls within the "liberty or property" protected by the Fourteenth Amendment, the Court looked to the functional realty of parole  that the parolee has justifiably relied on an express or implied promise that parole will only be revoked if he fails to satisfy the conditions imposed on his release and the fact that the parolee is "[able] to do a wide range of things open to persons who have never been convicted of any crime" (id., at 482). Though the parolee is subject to conditions not imposed on ordinary citizens, his situation differs substantially from prison confinement. Because he has been released based on an evaluation that he will be able to return to society and function as a responsible individual, "he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life" (id.). The Court thus concluded:
"the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a `grievous loss' on the parolee and often on others. * * * By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment" (id., at 482 [emphasis supplied]).
Having determined that due process protections are implicated by parole revocation, the Morrissey Court examined what process is due. The Court recognized that the factual nature of the two-step parole revocation process demands "an effective but informal hearing," given the obvious interest of the parolee in his conditional freedom and of the State "in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole" (id., at 484, 485; see also, Black v Romano, 471 US 606, 612, reh denied 473 US 921).
The Court ultimately held that one of the minimum procedural protections constitutionally required at the parole revocation hearing is "the right to confront and cross-examine adverse witnesses (unless the [adjudicator] specifically finds good cause for not allowing confrontation)" (Morrissey v Brewer, supra, at 489; *612 see also, People ex rel. McGee v Walters, 62 N.Y.2d 317, supra [requiring finding of good cause and weighing of pertinent factors before hearsay evidence admitted at parole revocation hearing]). Because the revocation hearing is not the equivalent of a full adversarial criminal trial, however, this confrontation requirement, the procedural protection which Edwin L. contends was constitutionally required for the determination that he had violated the conditions of his ACD release, is not without flexibility. In Gagnon v Scarpelli (411 US 778, supra), the Supreme Court explained that the Morrissey confrontation requirement does not prohibit the use of conventional substitutes for live testimony at parole and probation revocation hearings, including affidavits, depositions, and documentary evidence, when the adjudicator determines that such alternatives are appropriate (id., at 782, n 5; see also, Morrissey v Brewer, supra, at 489 ["the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial"]).[1] Thus, this Court has stated that in determining whether confrontation is required at a parole revocation hearing the adjudicator should consider "not only the preference for confrontation, but also whether, under the circumstances, confrontation would aid the fact-finding process, and the burden which would be placed on the State in producing the witness" (People ex rel. McGee v Walters, 62 NY2d, at 322, supra).
The same minimum procedural protections required at a parole revocation hearing, including the confrontation requirement, are likewise constitutionally required for revocation of *613 probation which also "result[s] in a loss of liberty" and which, like parole revocation, involves a two-step process in which the violation must be proven and the government's discretion to revoke probation exercised on the basis of that finding (Gagnon v Scarpelli, 411 US, at 782, 784-785, supra).
Because there is no question that juveniles subject to loss of liberty in delinquency proceedings are generally entitled to the same due process protections as criminal defendants (see, In re Gault, 387 US 1, supra; People ex rel. Silbert v Cohen, 29 N.Y.2d 12), the only pertinent question is whether a juvenile released subject to conditions imposed by a post-fact-finding adjournment in contemplation of dismissal is similarly situated to a probationer or parolee such that the same due process protections are required. For purposes of the due process inquiry, we conclude that their situations are essentially identical.
First, a post-fact-finding ACD release is similar to parole and probation in that, despite a prior adjudication of guilt (i.e., the commission of a criminal act), a determination is made that confinement is not required and that the juvenile will likely be able to lead a productive, law-abiding life (and society will be adequately protected), if he or she is released subject to the conditions of an ACD order. Thus, like probation and parole, a post-fact-finding ACD is a rehabilitative measure and the juvenile released subject to the conditions of a post-fact-finding ACD order is able to do many of the things other juveniles, who have been found guilty of or have admitted to acts which would otherwise constitute a crime, may not. And, like the parolee and probationer, the juvenile relies on the promise that his conditional freedom will remain in effect if the conditions of the ACD order are not violated.
Thus, in contrast to the majority's description of the juvenile's "attenuated liberty interest in the least restrictive dispositional order" and the lack of a "vested liberty interest in an ACD" (majority opn, at 603), it is the juvenile's interest in his or her continued conditional liberty  his or her release from the court's supervision subject to the conditions imposed by the ACD order  which is the constitutionally significant liberty interest at stake in this case. And it is indistinguishable from the conditional liberty interest of a parolee or probationer. The majority's statement that "[t]he only loss the ACD juvenile has suffered, which other juveniles proceeding to disposition after adverse fact findings have not, is the possibility that the petition will be dismissed" (majority opn, at 602), completely ignores the conditionally released juvenile's interest in the *614 continuation of the conditional liberty he or she experiences once the court orders an ACD. As Morrissey teaches, it is the termination of that conditional liberty interest which requires the due process protections outlined in that case.
Second, the loss of the juvenile's conditional liberty for a violation of conditions of a post-fact-finding ACD, like parole and probation revocation, entails the same two-step process. There is an initial factual determination whether the juvenile has violated any of the conditions of the ACD order. If violations are found, the matter is restored to the calendar for a dispositional hearing (see, Family Ct Act § 315.3), where the Family Court must determine whether, in light of the juvenile's violation of the ACD order, the juvenile "requires supervision, treatment or confinement" (id., § 352.1). This second stage of inquiry, whether to apply further freedom-restricting sanctions, is parallel to the second step of the parole and probation revocation process, to determine whether "the parolee [should] be recommitted to prison or * * * other steps [should] be taken to protect society and improve chances of rehabilitation" (Morrissey v Brewer, 408 US, at 480, supra). Thus, like the parole and probation revocation determination, the first inquiry  whether the juvenile has violated a condition of the ACD order  is purely factual. And the second  consisting of a "prediction as to the ability of the individual to live in society without committing antisocial acts" (id.)  though involving an exercise of discretion, "depends on [the accuracy of those] facts" (id.). The majority's reliance on the procedural protections afforded the juvenile by the dispositional hearing (see, majority opn, at 601, 603-604, 604) is thus misplaced, because the court's dispositional discretion  and the juvenile's conditional liberty interest  hinges on the accuracy of the determination that a violation occurred and "how many and how serious the violations were" (Morrissey, supra, at 480).
Nonetheless, the majority places decisive significance on the fact that before sanctions are imposed at the dispositional hearing  akin to sentencing in the criminal context  Family Court must make a finding that the juvenile is a delinquent, and maintains that this is what distinguishes Edwin L.'s situation from that of a parolee or probationer (see, majority opn, at 601). But the adjudication of the juvenile as a delinquent merely follows from the court's determination that the child is in need of "supervision, treatment or confinement" and, as we have demonstrated, that determination is nothing other than the second step of the parole or probation revocation process *615 where the adjudicator determines, in its discretion, whether, despite the violation of his or her conditional release, the person should remain free or be subject to confinement and custody (see, Morrissey v Brewer, 408 US, at 480, supra). Thus, the dispositional hearing does not distinguish the termination of a post-fact-finding ACD from parole or probation revocation for due process purposes.
Finally, the State's interests in "restoring [the juvenile] to normal and useful life within the law" and in "not having [the adjourned matter restored to the calendar] because of erroneous information or because of an erroneous evaluation of the need to [restore the matter], given the breach of [the ACD] conditions" (id., at 484), are the same in this context as they are in the context of parole and probation revocation.
Thus, despite the fact that a post-fact-finding adjournment in contemplation of dismissal is not listed as a dispositional alternative like probation and conditional release (the revocation of which are statutorily protected by a wide array of due process protections) (see, Family Ct Act § 352.2 [1] [list of dispositional alternatives]; id., §§ 360.2, 360.3 [notice and hearing on violation]), it is the functional equivalent of probation or parole since, upon a determination that the juvenile has violated the conditions of his ACD release and a determination that the juvenile requires "supervision, treatment or confinement," the juvenile suffers the same "grievous loss" of liberty. Therefore, the additional procedural protection sought by the juvenile in this case  a requirement that the court make a finding of good cause before admitting otherwise inadmissible hearsay evidence  is constitutionally mandated (Morrissey v Brewer, supra, at 489).[2]
*616 The remaining grounds relied upon by the majority to reject appellant's position are also unavailing. The argument that these additional procedural requirements may inhibit the presentment agency from recommending an ACD order (see, majority opn, at 604) was made and rejected in Morrissey (Morrissey v Brewer, supra, at 475, 483). Moreover, the issuance of an ACD is not dependent upon the presentment agency's recommendation, but requires only the consent of the court and juvenile (see, Family Ct Act § 315.3 ["the court may * * * with the consent of the respondent [juvenile] order that the proceeding be `adjourned in contemplation of dismissal'"] [emphasis supplied]; cf., CPL 170.55 [1] [criminal ACD may be issued only with consent of both parties]). This Court, likewise, has already rejected the argument that procedural hearing requirements will unduly infringe on the informal and rehabilitative nature of Family Court proceedings (see, People ex rel. Silbert v Cohen, 29 N.Y.2d 12, 15-16, supra) and the majority's concern that requiring confrontation in the absence of a good cause finding will "introduce[] unnecessary complexity into the process of granting and vacating ACD orders" (majority opn, at 604) is mitigated by the fact that Morrissey requires only an informal hearing. "A simple factual hearing will not interfere with the [Family Court's] exercise of discretion" (Morrissey v Brewer, 408, US, at 483, supra). The legislative mandate that there be a swift determination of the charges against the juvenile will not be unduly thwarted by an additional hearing in this context since the lengthening of the process is a factor the juvenile may consider in consenting to the ACD order (see, Mem of Div of Crim Justice Servs, Bill Jacket, L 1973, ch 806 [commenting on predecessor to Family Court Act § 315.3 which arguably permitted the court to issue an ACD over the juvenile's objection]).
For all of the foregoing reasons, Family Court's entire (or at the very least substantial) reliance on hearsay evidence to determine that Edwin L. violated the conditions of his ACD, without finding good cause for dispensing with confrontation, violated his right to procedural due process and, therefore, the order affirming the dispositional order of Family Court should be reversed.
Order affirmed, without costs.
NOTES
[1] Thus, the juvenile receives another opportunity for a clean start despite the existence of a finding that the juvenile has committed acts which, if committed by an adult, would have constituted a crime.
[2] These records should have been introduced into the record of the proceedings.
[1] The majority's description of Morrissey as permitting at the parole revocation hearing the consideration of hearsay evidence that would not be admissible in an adversary trial (majority opn, at 605, quoting Morrissey v Brewer, supra, at 489), ignores the requirement in that case that confrontation cannot be dispensed with unless good cause for doing so is found (see, Morrissey v Brewer, supra, at 489). As clarified by the Supreme Court in Gagnon v Scarpelli (supra), the evidentiary flexibility permitted in Morrissey is contingent upon a finding that there exists good cause for dispensing with confrontation (see, Gagnon v Scarpelli, 411 US, at 782, n 5, supra ["we emphasize that we did not in Morrissey intend to prohibit use where appropriate of the conventional substitutes for live testimony"] [emphasis supplied]), otherwise the confrontation requirement would be meaningless. Thus, the majority's contention that "[t]he legitimate basis test provides many of the procedural protections enumerated by the Morrissey Court," including notice and an opportunity to respond to the allegations (majority opn, at 605), disregards the fact that it does not provide the Morrissey right to confrontation  the very procedural safeguard sought by Edwin L. in this case.
[2] A fortiori, Morrissey v Brewer demands that, in all post-fact-finding ACD cases where termination of the ACD is sought for violations of conditions, "an effective but informal hearing" be held (Morrissey v Brewer, 408 US, at 485, supra), even when the use of hearsay might be permitted. Thus, I cannot agree with the majority's suggestion that "a hearing is not required in every case" (majority opn, at 605).

The presentment agency's reliance on ACD procedures in the criminal courts (see, CPL 170.55) to support the argument that a hearing is not required, is misplaced. In the context of a criminal proceeding, in contrast to a juvenile delinquency proceeding, an adjournment in contemplation of dismissal may only be issued prior to the guilt-finding stage (CPL 170.55 [1]). Assuming without deciding that due process would not require a hearing to terminate an ACD in criminal court, the effect of the termination would be to restore the defendant's case to a trial calendar where his or her liberty interest would be subject to the full panoply of pretrial and trial due process protections accorded one accused of a crime. Thus a criminal defendant would not appear to need the full procedural safeguards required by Edwin L. here.